## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| SPIROS PETE RIGAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-12-S-2401-NW |
| | ) | |
| THE CITY OF ROGERSVILLE, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is before the court on a motion for summary judgment filed by defendant, Jason Shireman.[1]  Plaintiff, Spiros Pete Rigas, commenced this action in the Circuit Court of Lauderdale County, Alabama, on June 8, 2012, and named as defendants the Town of Rogersville, Alabama,[2] and Rogersville Police Officer Jason Shireman.[3]  Both defendants timely removed the case to this court on July 6, 2012, based on federal question jurisdiction.  *See* 28 U.S.C. §§ 1331, 1441, 1446.

The plaintiff's complaint contained four counts:  a claim for assault and battery

---

[1] Doc. no. 27 (Motion for Summary Judgment), at 1.

[2] A careful reader will notice that the caption of this action references the "*City* of Rogersville" (emphasis supplied).  In the motion to dismiss filed by that municipal corporation, however, this court was informed that "[t]he Town is incorrectly referred to in the complaint as [the] '*City* of Rogersville, Alabama.'"  Doc. no. 2, at 1 n.1 (alterations supplied) (emphasis in original).

[3] *See* doc. no. 1 (Notice of Removal), at ECF 11-23 (hereafter, "Plaintiff's Complaint").

against Officer Shireman; a claim for false imprisonment and/or false arrest against both defendants; a claim for negligence against the Town; and a claim that both defendants violated rights guaranteed to plaintiff by the Fourth Amendment,[4] as made applicable to the states by incorporation into the Fourteenth Amendment to the United States Constitution.[5]   All claims against the Town were dismissed on January 31, 2013, for failure to state a claim upon which relief could be granted.[6]   Accordingly, only plaintiff's claims against Officer Shireman remain at issue.

The fourth count of plaintiff's complaint — alleging that Officer Shireman violated plaintiff's Fourth Amendment rights — is asserted through 42 U.S.C. § 1983.[7]   This court has original jurisdiction of that claim under the federal question

---

[4] The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV (1791).

[5] The "incorporation" of the Fourth Amendment into the Due Process Clause of the Fourteenth Amendment and, thereby, its application to the various states was finalized by the Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643 (1961).  *See also*, *e.g.*, *Ker v. California*, 374 U.S. 23 (1963); and *Wolf v. Colorado*, 338 U.S. 25 (1949).  Note well that, despite the Fourth Amendment's language prohibiting "unreasonable" searches of *places* ("houses") and seizure of *things* ("papers[] and effects"), modern jurisprudence clearly establishes that the Fourth Amendment "protects individuals."  *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001)).

[6] *See* doc. no. 21 (Memorandum Opinion and Order of Dismissal), at 11–12.

[7] *See* Complaint ¶¶ 35-41.

2

statute,[8] and has supplemental jurisdiction over the state-law tort claims asserted by plaintiff in Counts One and Two.[9]  Officer Shireman moves for summary judgment on all claims, alleging that: he is subject to "qualified immunity" under 42 U.S.C. § 1983; that he did not violate plaintiff's Fourth Amendment rights; and that he is subject to "State-agent immunity" for all of plaintiff's state-law tort claims.[10]

Summary judgment should be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[8] Section 1983 provides a means of seeking redress against governmental entities and officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes.  The statute was enacted for the express purpose of enforcing the Fourteenth Amendment.  *See Mitchum v. Foster*, 407 U.S. 225, 238–39 (1972); *see also*, *e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe v. Pape*, 365 U.S. 167, 171 (1961).

Section 1983 is not jurisdictional, however, and it is not "itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted).  Two jurisdictional statutes apply to § 1983 litigation in federal court:  28 U.S.C. § 1343(a)(3), the jurisdictional counterpart of 42 U.S.C. § 1983; and, 28 U.S.C. § 1331, the general federal question statute.  Of the two statutes, § 1331 provides for more expansive jurisdiction, because it affords jurisdiction in cases raising a federal question.  In contrast, § 1343(a)(3) limits federal jurisdiction to suits involving "equal rights."  Neither statute sets an amount that must be in controversy for jurisdiction to attach.  Furthermore, actions that were, as in the present case, commenced in state court, and which assert a claim based upon 42 U.S.C. § 1983, are removable pursuant to 28 U.S.C. §§ 1441, 1443, and 1446(a), within the time allowed by § 1446(b).

[9] With jurisdiction over federal claims, district courts also have jurisdiction to adjudicate state law claims that arise out of "a common nucleus of operative fact."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  Formerly known as "ancillary" and "pendent jurisdiction," supplemental jurisdiction under 28 U.S.C. § 1367 permits both pendent claim and pendent party jurisdiction.  *See, e.g., Williams v. Ragnone*, 147 F.3d 700, 702–03 (8th Cir. 1998) (holding that § 1983 claims asserted in state court are removable, together with state law claims forming part of the same case or controversy).

[10] Doc no. 28 (Brief in Support of Defendant's Motion for Summary Judgment [*hereinafter* Defendant's Brief]), at 12, 29.

matter of law." Fed. R. Civ. P. 56(a).  A motion for summary judgment may properly

be granted against a nonmoving party who "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

> Under Federal Rule of Civil Procedure 56(c), summary judgment
> is proper "if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that there
> is no genuine issue as to any material fact and that the moving party is
> entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477
> U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Chapman v. AI
> Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for
> summary judgment always bears the initial responsibility of informing
> the court of the basis for its motion and identifying those portions of the
> pleadings or filings which it believes demonstrate the absence of a
> genuine issue of material fact.  *See id.* at 323, 106 S.Ct. 2548.  Once the
> moving party has met its burden, Rule 56(e) requires the nonmoving
> party to go beyond the pleadings and by its own affidavits, or by the
> depositions, answers to interrogatories, and admissions on file, designate
> specific facts showing that there is a genuine issue for trial.  *See id.* at
> 324, 106 S. Ct. 2548.

*Zann v. Whidby*, 904 F. Supp. 2d 1229, 1234 (N.D. Ala. 2012) (Hancock, J.).  Any

reasonable dispute or doubt as to any material fact, and all justifiable inferences, are

resolved in favor of the non-moving party.  *See Fitzpatrick v. City of Atlanta,* 2 F.3d

1112, 1115 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Property*,

941 F.2d 1428, 1437 (11th Cir. 1991)).  The materiality of a fact is determined by the

4

substantive law at issue.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986).  A "genuine" dispute is one in which a reasonable jury could find for the non-

moving party.  *Id.*

## I.  FACTS AS ALLEGED

Plaintiff resides in Rogersville, Alabama, and was inside his home on the

evening of March 14, 2011.[11]   Around 9:00 p.m., Rogersville Police Officer Jason

Shireman loudly knocked on plaintiff's front door.[12]  Plaintiff answered the door and

asked why defendant was pounding on his door.[13]  Defendant informed plaintiff that

he must stop discharging his firearm within the corporate limits of the Town of

Rogersville, because such actions violated a town ordinance.[14]  Plaintiff admits that

he had fired a gun on his property, but contends that the defendant had never

observed him holding or discharging the weapon.[15]  Plaintiff then began to lecture

defendant on the scope of Second Amendment rights and the sanctity of his property

rights.[16]  During that discourse, defendant "suspected [that plaintiff] may have been

---

[11] *Id.* ¶¶ 5, 9–11.

[12] *Id.* ¶¶ 6–8.

[13] *Id.* ¶ 11.

[14] *Id.* ¶ 12.

[15] *Compare* doc. no. 29-1 (Rigas Deposition), at 229–30, *with* doc. no. 29-2 (Shireman Affidavit) ¶¶ 4–20.

[16] *See* doc. no. 28 (Defendant's Brief) ¶ 13; doc. no. 29-1 (Rigas Deposition), at 125–26, 136–41.

under the influence of some intoxicant or else was on some medication."[17]  Plaintiff later admitted to having taken three legal, prescribed medications prior to the incident.[18]  In any event, what happened next is a matter of significant dispute.

Defendant and an alleged eyewitness claim that plaintiff physically shoved defendant, then turned to re-enter his home.[19]  Plaintiff denies that.[20]

Both parties agree that, at some point, defendant shoved plaintiff, causing his head to strike a brick wall.[21]  Plaintiff maintains he never touched defendant until after defendant had pushed him and attempted to place him under arrest.[22]

Defendant attempted to formally arrest plaintiff, but plaintiff refused to be arrested, and scrambled for the door "to escape further harm."[23]  Defendant leveraged himself inside the door, and began bludgeoning the tempered glass window of the door with a metal baton, in an attempt to break the glass and reach through the opening to "get control" of plaintiff.[24]  Defendant ultimately succeeded in breaking the door's glass window, and admitted that he repeatedly struck plaintiff's hand and

---

[17] Doc no. 28 (Defendant's Brief) ¶ 11 (alteration supplied).

[18] Doc. no. 29-1 (Rigas Deposition), at 113–15.

[19] *See* doc. no. 29-2 (Shireman Affidavit) ¶ 10; doc. no. 29-3 (Holden Affidavit) ¶ 9.

[20] Doc. no. 29-1 (Rigas Deposition), at 125, 137, 141.

[21] Doc. no. 29-1 (Rigas Deposition), at 141; doc. no. 29-2 (Shireman Affidavit) ¶ 10.

[22] *See* doc. no. 29-1 (Rigas Deposition), at 204, 303.

[23] Doc. no. 28 (Defendant's Brief) ¶ 19 (quoting doc. no. 29-2 (Shireman Affidavit) ¶ 13).

[24] *Id.*

arm with the baton because he believed that plaintiff was attempting to reach his holstered firearm.[25]

Plaintiff "bull-rushed" defendant out of the doorway and off his porch, locked the door, and called 911 to request deputies from the Lauderdale County Sheriff's Office.[26]  Plaintiff also called his mother.  When plaintiff's mother and the sheriff's deputies arrived, plaintiff walked out of his residence and was arrested.[27]   An ambulance transported plaintiff to the Eliza Coffee Memorial Hospital, where he received treatment for the injuries inflicted during the fracas.[28] Defendant claims that he also suffered injuries.[29]

On March 16, 2011, two days after the altercation, defendant swore out a complaint against plaintiff for assault, escape, and resisting arrest.[30]  Ultimately, a Lauderdale County grand jury refused to return an indictment.[31]  Defendant is no longer employed by the Rogersville Police Department.[32]

## II. DISCUSSION

---

[25] *Id.* ¶ 20.

[26] *Id.* ¶¶ 22, 25.

[27] Complaint ¶¶ 19–20.

[28] Doc. no. 28 (Defendant's Brief) ¶ 28.

[29] *Id.*

[30] *Id.* ¶ 29.

[31] Doc. no. 29-5 (Letter from Lauderdale County District Attorney).

[32] *See* doc. no. 29-2 (Shireman Affidavit) ¶ 2.

The summary judgment requirement to "review all evidence and make all reasonable inferences in favor of the party opposing summary judgment," *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000), takes on even greater force when, in an action founded upon 42 U.S.C. § 1983, a state governmental official files a Rule 56 motion interposing the affirmative defense of qualified immunity. In such cases, the court must answer the legal question of whether the governmental official is entitled to qualified immunity under *the plaintiff's* version of the facts. As the Supreme Court observed in *Saucier v. Katz*, 533 U.S. 194 (2001), a court that is "required to rule upon the qualified immunity issue must consider . . . this threshold question: *Taken in the light most favorable to the party asserting the injury*, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201 (emphasis supplied).

> Indeed, we approach the facts from the plaintiff's perspective because "[t]he issues . . . concern 'not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'" *Sheth* [*v. Webster*], 145 F.3d [1231,] 1236 [(11th Cir. 1998)] (quoting *Johnson v. Jones*, 515 U.S. 304, 311, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995)). As this Court has repeatedly stressed, the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000). Nevertheless, for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff. *See Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

*Lee v. Farraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (alterations supplied).

Here, according to the facts pled by defendant, the plaintiff shoved him during the heat of their confrontation, at which point defendant attempted to place plaintiff under arrest.[33]   Plaintiff denies that allegation, however, charging instead that defendant first pushed him violently into a wall, then attempted to place him under arrest.  Plaintiff alleges that he neither touched nor threatened defendant until after defendant attempted to arrest him.[34]

In response, defendant draws this court's attention to the fact that plaintiff's brief in opposition to defendant's motion for summary judgment failed to comply with the Uniform Initial Order entered in this case; specifically, plaintiff failed to present the disputed facts in clearly numbered paragraphs, failed to present distinct legal arguments, and generally failed to cite to the record or to applicable statutory or case law authorities.[35]   For those reasons, defendant asks this court to consider plaintiff as having admitted all facts set out in defendant's brief in support of his motion for summary judgment.[36]   In view of plaintiff's *pro se* status, however, this court declines to do so.

---

[33] Doc. no. 28 (Defendant's Brief) ¶ 14.

[34] *See, e.g.*, doc. no. 29-1 (Rigas Deposition), at 127, 137, 142, 147–48, 204, 303.

[35] *Compare generally* doc. no. 6 (Uniform Initial Order), Appendix II, *with* doc. no. 32 (Response to Motion for Summary Judgment).

[36] Doc. no. 35 (Reply Brief in Support of Motion for Summary Judgment), at 4.

Among other considerations, district courts are instructed to "liberally construe" pleading requirements for parties who proceed *pro se*, as they cannot be expected to possess the expertise of practicing attorneys in conforming with the procedural rules of court. *See, e.g., Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.")).   The factual narrative contained in plaintiff's response brief does nothing to advance the substantive merits of his case, but his central allegation is clear:  defendant initiated physical contact with him, and not the other way around.[37]  To rob a *pro se* plaintiff of that singular allegation as a penalty for a defective pleading is a step too far.

In addition, plaintiff's sworn deposition testimony (attached as Exhibit A to defendant's brief in support of summary judgment) flatly denies initiating contact with defendant prior to the attempted arrest.[38]  That account of events is controlling for purposes of summary judgment.

## A.    Qualified Immunity

---

[37] *See* doc. no. 32 (Response to Motion for Summary Judgment), at ECF 1–2, 8.

[38] *See, e.g.*, doc. no. 29-1 (Rigas Deposition), at 127, 137, 142, 147–48, 204, 303.

The doctrine of qualified immunity provides "immunity from suit to governmental officials performing discretionary functions as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Green v. Brantley*, 941 F. 2d 1146, 1148 (11th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of the doctrine is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002). The doctrine protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also, e.g.*, *Lee*, 284 F.3d at 1193–94; *Chesser v. Sparks*, 248 F.3d 1117, 1121–22 (11th Cir. 2001).

In order to be eligible to claim the benefits of the doctrine, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)). Here, defendant has established that he was acting within his discretionary authority as a police officer for the Town of Rogersville.[39]   Thus, "the burden shifts to the

---

[39] *See* doc. no. 28 (Defendant's Brief) ¶¶ 5–6; doc. no. 29-2 (Shireman Affidavit) ¶¶ 3–4.

plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

### 1.    Probable cause for arrest

To establish a violation of the Fourth Amendment when making an arrest, the plaintiff must show that the arrest was unreasonable. *See*, *e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (internal quotation marks and citation omitted).  An arrest is unreasonable when it is not supported by probable cause. *See*, *e.g.*, *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id*. (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Further, *actual* probable cause is not required for purposes of claiming the benefits of the doctrine of qualified immunity. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).  Rather, only *arguable* probable cause is required: that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] *could have believed* that probable cause existed to

arrest the plaintiff[]." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (alterations and emphasis supplied) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).  "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001) (footnote omitted).[40]  The key inquiry in determining whether *arguable* probable cause existed is the question of whether the information known by the officer at the time of the arrest was sufficient to warrant a reasonable person in forming the belief that the suspect had committed a crime.  *Gernstein v. Pugh*, 420 U.S. 103, 111 (1975); *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

---

[40] The omitted footnote from *Scarbrough* reads as follows:

Our inquiry in qualified-immunity analysis is whether the government actor's conduct violated clearly established law and not whether an arrestee's conduct is a crime or ultimately will result in conviction.  Police officers are not expected to be lawyers or prosecutors.  *See Lassiter*, 28 F.3d at 1152 n. 8 (recognizing that it is "'unfair and impracticable' to hold public officials to the same level of knowledge as trained lawyers") (quoting *Davis v. Scherer*, 468 U.S. 183, 196 n. 13, 104 S. Ct. 3012, 3020 n.13, 82 L. Ed. 2d 139 (1984)).  The district judge focused on the arrestees instead of the arresting officer in his decision to deny Hall qualified immunity.  The issue should have been whether Hall violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime.

*Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

13

Further, "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *United States v. Saunders*, 476 F.2d 5, 7 (1973) (citing *United States v. Bowers*, 458 F.2d 1045 (5th Cir. 1972)); *United States v. Brookins*, 434 F.2d 41 (5th Cir. 1972)[41]; *Klingler v. United States*, 409 F.2d 299 (8th Cir. 1969) (alteration supplied).

Defendant argues that, at the time of the contested arrest, he had actual probable cause to arrest plaintiff for the offenses of assault, resisting arrest, escape in the third degree, and reckless endangerment (for discharging a firearm). In the alternative, he argues that he had, at a minimum, *arguable* probable cause to effect arrests for those offenses. "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends . . . on the elements of the crime." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). A brief analysis of the legal standards for each offense leads to the conclusion that there are genuine issues of material fact precluding a conclusion that defendant possessed either actual or arguable probable cause for arresting plaintiff.

---

[41] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### a.   Assault

A person commits an assault in the second degree under Alabama law if, "with intent to prevent a peace officer . . . from performing a lawful duty, he or she intends to cause physical injury and he or she causes physical injury to any person."  Ala. Code § 13A-6-21 (1975) (2005 Replacement Vol.) (alteration supplied).  Actual physical injury to a victim is required.  *Id.*; *see also, e.g., Miller v. State*, 645 So. 2d 363, 364 (Ala. Crim. App. 1994) ("Some degree of physical injury is an element of each degree of assault.").[42]

Defendant relies on plaintiff's act of shoving defendant off his porch as the sole incident giving rise to probable cause for arresting plaintiff for assault in the second degree.[43]  Construing the contested facts in the light most favorable to the plaintiff, however, it is clear that a genuine issue of material fact exists as to whether plaintiff

---

[42] Each probable cause determination turns on an interpretation of Alabama state law.  Where the highest state court — here, the Alabama Supreme Court — has ruled on the issue, the federal court will follow its rule.  *See, e.g., Molinos Valle Del Cibao, C., por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011).  Where the highest state court has not yet ruled on a precise issue, however, a federal court must  follow the decisions of state intermediate appellate courts, unless "persuasive evidence demonstrates that the highest court would conclude otherwise." *Id.*; *accord Auto-Owners Insurance Co. v. E.N.D. Services, Inc.*, 506 F. App'x 920, 924 n.4 (11th Cir. 2013); *Allstate Life Insurance Co. v. Miller*, 424 F.3d 1113, 1116 (11th Cir. 2005).  Thus, absent "persuasive evidence" to the contrary, where the Alabama Supreme Court has not spoken on an issue, this court must accept the decisions of the Court of Criminal Appeals of Alabama as definitive authority on the interpretation of Alabama criminal law.

[43] Doc. no. 28 (Defendant's Brief), at 14–15.

made physical contact with defendant prior to the attempted arrest.[44]

By the time defendant *effectuated* plaintiff's arrest, it is undisputed that plaintiff had "bull-rushed" defendant off the porch, which could have caused the physical injuries defendant complained of in his affidavit.[45]  Without physical contact *prior* to the attempted arrest, however, defendant could not have suffered an injury and, therefore, neither actual nor probable cause to arrest for assault could have possibly existed at the time the arrest began.  *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.") (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) ("[A]pplying the qualified immunity test in the context of Plaintiff's alleged unlawful arrest, we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff . . . ." (alterations supplied)).

### b.    Resisting arrest and escape in the third degree

---

[44] *Compare id.*, doc. no. 29-2 (Shireman Affidavit) ¶ 10, *and* doc. no. 29-3 (Holden Affidavit) ¶ 8, *with* doc. no. 29-1 (Rigas Deposition), at 127, 137, 142, 147–48, 204, 303 *and* doc. no. 32 (Response to Motion for Summary Judgment), at ECF 1–2, 8.

[45] Doc no. 28 (Defendant's Brief) ¶¶ 22, 25; doc. no. 29-1 (Rigas Deposition), at 204, 303, 308.

Under Alabama law, a person commits the crime of resisting a *lawful* arrest by preventing or "attempting to prevent a peace officer from affecting [*sic*] a lawful arrest of himself or of another person." Ala. Code § 13A-10-41. An arrest without a warrant, as here, may be effected "if a public offense has been committed or a breach of the peace threatened in the presence of the officer."[46] Ala. Code § 15-10-3(1).

There is no Alabama law or practice criminalizing resistance of an *unlawful* arrest, however. *See Shinault v. City of Huntsville*, 579 So. 2d 696, 698 (Ala. Crim. App. 1991); *see also id.* at 699–700 (Bowen, J., concurring). Indeed, Alabama law has historically *permitted* use of reasonable force to resist an unlawful arrest. Ala. Code § 13A-3-28 Commentary (1975) ("Alabama law . . . allows a person to use unreasonable force to resist an unlawful arrest." (alteration supplied)) (citing *Spooney v. State*, 217 Ala. 219, 225 (Ala. 1928); *Brown v. State*, 109 Ala. 70, 91 (Ala. 1895); *Tarwater v. State*, 75 So. 816, 817 (Ala. Crim. App. 1917)); *see also, e.g.*, *Brown*, 109 Ala. at 91 ("It is not the duty of the citizen to submit to any other than a lawful arrest. It has been said the duty 'is found in the law side by side with the right of resistance

---

[46] Ala. Code §15-10-3 contains seven additional scenarios in which an arrest without a warrant may be effected, including the commission or suspected commission of a felony, Ala. Code § 15-10-3(2)–(5), issuance of a warrant, §15-10-3(6), issuance of a protective order, § 15-10-3(7), and offenses involving domestic violence, § 15-10-3(8). None of those scenarios are applicable to the case at issue.

to an unlawful one . . . .'" (alteration supplied) (quoting *Drennan v. People*, 10 Mich. 169, 186 (Mich. 1862)).

Escape in the third degree similarly requires an underlying lawful arrest. *See* Ala. Code § 13A-10-33; *id.* Commentary (1975). Escape in the third degree occurs where a person "escapes or attempts to escape from custody." Ala. Code § 13A-10-33. "Custody" refers to "any detention pursuant to a *lawful* arrest or court order." *See, e.g.*, *Abernathy v. State*, 462 So. 2d 960, 961 (Ala. Crim. App. 1984) (quoting Ala. Code § 13A-10-33 Commentary (1975)) (emphasis supplied). Absent an initial lawful arrest, then, neither arguable nor actual probable cause to arrest may exist for either resisting arrest or escape in the third degree.

Defendant has not met his burden of showing that the attempted warrantless arrest was "lawful." *See, e.g., Celotex*, 477 U.S. at 323. The lawfulness of the arrest turns, again, on whether plaintiff initiated physical contact with defendant prior to the attempted arrest.[47]   Taking plaintiff's version of events — that defendant initiated physical contact with plaintiff in anger, then tried to arrest plaintiff when he attempted to extricate himself from the fracas — no reasonable person in defendant's position could have believed the underlying arrest was lawful. Because a lawful arrest is the prerequisite for the crimes of resisting arrest and escape in the third

---

[47] *See* doc. no. 28 (Defendant's Brief), at 16.

18

degree, *see* Ala. Code § 13A-10-41; § 13A-10-33 Commentary (1975), no reasonable person could believe probable cause to arrest existed for those crimes. Therefore, defendant is not entitled to summary judgment on the issue of qualified immunity on those grounds.

### c.    Reckless endangerment

Defendant argues in the alternative that, even if arguable probable cause did not exist to arrest plaintiff for any of the charged offenses, he nevertheless had arguable probable cause to arrest plaintiff for reckless endangerment, based on the sole fact that defendant admitted to firing a gun on his property.[48] Although plaintiff was never charged with reckless endangerment, if arguable probable cause existed for plaintiff's arrest on those grounds, defendant would be entitled to qualified immunity.[49] *See Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) ("[A]ll that is required for qualified immunity to be applicable to an arresting officer is

---

[48] Doc. no. 28 (Defendant's Brief), at 15 n.8.

[49] Defendant acknowledges that reckless endangerment is a misdemeanor, and that a warrantless arrest for a misdemeanor is not permitted under Alabama law unless the misdemeanor is committed in the officer's presence. *See* doc. no. 28 (Defendant's Brief) at 15 n.8; *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Nevertheless, the Eleventh Circuit has repeatedly held that, for purposes of false arrest claims made under § 1983, it is not necessary that the arrest be permissible under state law, only that probable cause exist for the arrest: *i.e.*, that a reasonable person in the officer's position, based on the facts and circumstances known to the officer at the time, would believe the suspect was committing or had committed a crime. *See Crosby*, 394 F.3d at 1333; *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). Therefore the only legal issue is whether defendant had probable cause to believe plaintiff had *committed the misdemeanor offense* of reckless endangerment.

'arguable probable cause to believe that a person is committing a particular public offense.'") (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998)).  Here, the bare admission of an earlier discharge of a firearm, without more, is not enough information for this court to conclude *as a matter of law* that a reasonable person could have believed probable cause existed to effectuate an arrest for reckless endangerment.  *See Redd*, 140 F.3d at 1382.

Reckless endangerment requires a person to recklessly engage in conduct creating a substantial risk of serious physical injury to another.  *See* Ala. Code § 13A-6-24.  Alabama Code § 13A-2-2 defines "recklessly" as a person being "aware of and consciously disregard[ing] a substantial and unjustifiable risk that the result will occur or that the circumstance exists."  Ala. Code § 13A-2-2 (alteration supplied).  Plaintiff admits that firing a gun can cause serious physical injury to another.[50]  Even so, more specific and egregious facts are required for the use or threatened use of a firearm to rise, even arguably, to the level of recklessness and conscious disregard.  *See, e.g., Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).  Such facts typically involve the arrested individual aiming or discharging the firearm in the direction of a person or a group of people in order to create a "substantial and unjustifiable risk" of injury.  *See, e.g., Crosby*, 394 F.3d at 1333 (finding arguable

_____

[50] Doc. no. 29-1 (Rigas Deposition), at 133.

20

probable cause for reckless endangerment where police officer responded to a report of shots fired *toward a residence*, heard a shot, saw plaintiff holding a shotgun, and heard plaintiff eject a shell from the shotgun); *Robinson v. McPherson*, 602 So. 2d 352, 354 (Ala. 1992) (finding probable cause for reckless endangerment where plaintiff pointed a gun *at defendant* and "cocked" it, and plaintiff had been involved in altercations with defendant in the past); *Hale v. State*, 654 So. 2d 83, 86 (Ala. Crim. App. 1994) (finding the elements of reckless endangerment satisfied where appellant and his brother emerged from a house brandishing guns, chased a group of people into and behind a barn, and then began firing a high-powered rifle *into the barn*); *M.S. v. State*, 625 So. 2d 1187, 1189 (Ala. Crim. App. 1993) (finding the elements of reckless endangerment satisfied where appellant fired a BB gun *at complainant, her daughter, and her granddaughter*).

Here, defendant had no knowledge or reason to believe that plaintiff had aimed, much less discharged, the gun at anyone. Defendant did not witness plaintiff aiming (or even holding) a gun, did not hear a shot, and had no reason to believe anyone was fearful of death or serious injury as a result of plaintiff's conduct. *See* Ala. Code § 13A-6-24. In fact, plaintiff contends in his deposition that he had minimized the risk of danger to others by firing at a target he had constructed that was surrounded by thick wood and rubber tires, and specifically chose a gun with "very little risk of

ricochet."[51]   Unlike the facts of *Crosby*, defendant was not responding to a report filed by a frightened citizen that plaintiff was in the act of firing a gun *at* anyone, but rather to a request by the Mayor of Rogersville to appease complaints made by plaintiff's neighbor.[52]  In fact, plaintiff's neighbor admitted in her deposition that she had to ask a police officer whether plaintiff's actions were even in violation of an ordinance.[53]  Those few facts cannot reasonably constitute even arguable probable cause for reckless endangerment, and certainly cannot sustain defendant's motion for summary judgment on the issue.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (placing the burden on the moving party to show the court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial).

This court cannot agree that a reasonable officer, in the position of defendant, and possessing only the knowledge defendant possessed at the time, would conclude that arguable probable cause for reckless endangerment existed at the time of the initial arrest attempt.  *See Redd*, 140 F.3d at 1382.  Thus, defendant is not entitled to summary judgment on the ground of qualified immunity.

**2.    Excessive force**

---

[51] *See id.* at 133–34.

[52] *See* doc. no. 28 (Defendant's Brief) ¶ 3.

[53] Doc. no. 29-3 (Holden affidavit) ¶ 5.

Plaintiff also alleges that defendant used excessive force while effectuating the arrest.[54] Specifically, plaintiff points to: defendant's initial shove, which resulted in two knots on the back of plaintiff's head; defendant's act of striking plaintiff's hand and arm with a police baton, resulting in multiple bruises; and defendant's act of shattering the window of plaintiff's door with his baton, injuring plaintiff's forearm.[55]

When an excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be "secure in their persons . . . against unreasonable . . . seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const., amend. IV (1791)) (internal quotation marks omitted).

Under the law of the Eleventh Circuit, however, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Lee v. Ferraro*, 284 F.3d 1188, 1193 (11th Cir. 2002) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (in turn citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995))). The logic of the rule is evident: if an arrest was illegal, *i.e.,* lacking in probable cause, then *any* force used in effecting the arrest would be excessive. *See Jackson*, 206 F.3d at 1171; *see*

---

[54] Complaint ¶¶ 24, 25, 37.

[55] *See, e.g.*, doc. no. 29-1 (Rigas Deposition), at 157–58, 213–16, 221–27.

*also Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (reaffirming that any force used while effectuating an arrest lacking probable cause is excessive); *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998); *Thornton v. City of Macon*, 132 F.3d 1395, 1398 (11th Cir. 1998).  Further, any potential damages recoverable from an excessive force claim would be recovered in a successful false arrest claim.  *See Williamson*, 65 F.3d at 159 ("[D]amages recoverable on [plaintiff's] false arrest claim include damages suffered because of the use of force in effecting the arrest." (alterations supplied)).

In the present case, the language of the complaint clearly connects the alleged assault, battery, and physical abuse with the unlawfulness of the arrest.[56]  As plaintiff does not allege excessive force during commission of a *legal* arrest, even as an alternative basis for recovery, any claim for excessive force is subsumed under plaintiff's false arrest claims and the court need not reach a separate answer on the motion for summary judgment.[57]  *See Jackson*, 206 F.3d at 1171 ("The correct analysis is that the excessive force claim is subsumed in the illegal stop or arrest claim, as recognized in *Williamson*, where a plaintiff contends the force was excessive because there was no basis for *any* force.").

---

[56] *See* Complaint ¶ 37.

[57] A claim for excessive force during a legal arrest, in contrast, is an independent claim. *Jackson*, 206 F.3d at 1171.

24

The court now turns to defendant's motion for summary judgment on plaintiff's state law claims.

## B.    State-Agent Immunity for State-Law Tort Claims

Defendant asserts that he is entitled to summary judgment on the basis of State-agent immunity from plaintiff's state-law claims of false arrest, false imprisonment, and assault and battery.[58]

When exercising supplemental jurisdiction over a state-law issue under 28 U.S.C. § 1367, a federal district court is required to apply the law of the forum state. *See* 28 U.S.C. § 1367; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1237 (11th Cir. 2010) ("In the instant case, the district court exercised supplemental jurisdiction over the petition for writ of certiorari, pursuant to 28 U.S.C. § 1367.  As such, state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress.").

In Alabama, a municipal police officer is immune from tort liability "arising out of his or her conduct or performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338(a).  This immunity rule was articulated in *Hollis v. City of Brighton*, 950 So. 2d 300 (Ala.

---

[58] *See* Plaintiff's Complaint, at ECF 11-23; doc. no. 28 (Defendant's Brief), at 12, 29.

2006), which revised a similar formulation in *Ex parte Cranman*, 792 So. 2d 392

(Ala. 2000), as follows:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> . . .
>
> (4) exercizing judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, *or serving as peace officers under circumstances enlisting such offers to immunity pursuant to § 6-5-338(a), Ala. Code (1975)*.

*Hollis*, 950 So. 2d at 309 (emphasis in original) (revising *Cranman*, 792 So. 2d at

405).  A State agent will *not* be immune from civil liability, however, when required

by law, or "when the State agent acts willfully, maliciously, fraudulently, in bad faith,

beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*,

792 So. 2d at 405.

The first step in a State-agent immunity analysis is to determine whether the

police officer whose conduct is challenged was engaged in the performance of a

discretionary function (as defined in *Cranman* and revised in *Hollis*) at the time the

alleged tort occurred.[59]  *See Ex parte Kennedy*, 992 So. 1276, 1282 (Ala. 2008)

---

[59] Formerly, State-agent immunity was referred to as "discretionary function immunity." *See, e.g.*, *Sheth v. Webster*, 145 F.3d 1231, 1236–38 (11th Cir. 1998).  Following *Cranman*, however, the Alabama Supreme Court definitively stated that it will follow the State-agent immunity standard articulated in *Cranman*, rather than the older discretionary function standard.  *See, e.g.*, *Ex parte*

(citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)).   Should defendant demonstrate that such discretionary actions form the basis for plaintiff's claims, the burden shifts to plaintiff to show that one of the two *Cranman* categories of exceptions is applicable.   Of course, on motion for summary judgment by the defendant, all reasonable questions of fact and inferences still are resolved in favor of the plaintiff.   *See Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also Saucier v. Katz*, 533 U.S. 204, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: *Taken in the light most favorable to the party asserting the injury*, do the facts alleged show the officers conduct violated a constitutional right?") (emphasis supplied).

Here, there is no factual dispute that defendant was acting within his discretionary function to enforce Alabama criminal law.[60]   Defendant's presence at plaintiff's home and subsequent actions all stemmed from his position as a police officer for the Town of Rogersville.   Therefore, the burden shifts to plaintiff to demonstrate that defendant acted "willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of law."   *Cranman*, 792

---

*Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (citing *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (citing *Howard v. City of Atmore*, 887 So. 2d 201, 203 (Ala. 2003))).

[60] *See* doc. no. 28 (Defendant's Brief) ¶¶ 5–6; doc. no. 29-2 (Shireman Affidavit) ¶¶ 3–4.

So. 2d at 405 (alteration supplied); *see Ex parte Kennedy*, 992 So. 2d at 1282 (citing *Ex parte Estate of Reynolds*, 946 So. 2d at 452).   In the context of a warrantless arrest, the absence of arguable probable cause defeats an officer's claim to immunity under Alabama Code § 6-5-338. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179 (Ala. 2003) ("Although this Court has not directly addressed the issue of the relationship between probable cause and discretionary-function immunity [under Alabama Code § 6-5-338], we agree that the standard of 'arguable probable cause' should govern further proceedings in this case." (alteration supplied)).   Therefore, defendant cannot be entitled to State-agent immunity as a matter of law if a genuine issue of material fact exists as to whether defendant had arguable probable cause to effect an arrest of plaintiff under state law. *See id.* at 1180 ("The district court denied the summary-judgment motion in [*Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 576 (S.D. N.Y. 2002)] because, under the evidence, when viewed most favorably to the plaintiff, 'no reasonable police officer could have believed that he had probable cause to arrest plaintiff.' 206 F. Supp. 2d at 576.   We must determine whether the same can be said of this case." (alteration supplied)).

### 1.      False arrest and imprisonment

"False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  Ala. Code §

28

6-5-170.  A false arrest will support a claim for false imprisonment.  *E.g., Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994).  As previously discussed, a genuine issue of material fact remains as to whether defendant possessed either actual or arguable probable cause to arrest plaintiff for assault, resisting arrest, escape, or reckless endangerment.[61]  The same analysis applies to defendant's state law claims.[62]  As defendant cannot demonstrate that either actual or arguable probable cause for his attempted arrest of plaintiff existed as a matter of law,[63] defendant is not entitled to State-agent immunity for plaintiff's false arrest and false imprisonment claim.

## 2.    Assault and battery

Under Alabama law, excessive force when effecting an arrest constitutes assault and battery.  *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000); *Sheth v. Webster*, 145 F.3d

---

[61] *See supra* Part III.A.

[62] In addition, reckless endangerment is a misdemeanor under Alabama law.  Ala. Code § 13A-6-24.  An individual may not be arrested for a misdemeanor under Alabama law unless the misdemeanor is committed in the presence of the arresting officer.  *Crosby v. Monroe County*, 394 F. 3d 1328, 1333 (11th Cir. 2004).  Defendant's contention that probable cause existed for plaintiff's arrest for reckless endangerment is based entirely on behavior that occurred out of defendant's presence; therefore, it is indisputable as a matter of state law, based on facts alleged by defendant and admitted by plaintiff, that no actual or arguable probable cause existed for the arrest of plaintiff for reckless endangerment.  *See supra* note 48.

[63] It is true that plaintiff bears the burden "to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable."  *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008).  But by alleging in both his sworn deposition and in his response brief that he did not strike defendant before defendant attempted to place him under arrest, plaintiff has created a genuine issue of material fact sufficient to defeat defendant's claim of immunity at the summary judgment stage.

1231, 1238 (11th Cir. 1998); *Thornton v. City of Macon*, 132 F.3d 1395, 1398 (11th Cir. 1998); *Franklin v. City of Huntsville*, 670 So. 2d 848, 852–53 (Ala. 1995). Absent probable cause, then, the use of *any force at all* is considered excessive in effectuating an unlawful arrest. *See* Ala. Code § 13A-3-27(a) ("A police officer is justified in using that degree of physical force which he reasonably believes to be necessary . . . unless the peace officer knows that the arrest is unauthorized." (alteration supplied)). A genuine issue of material fact exists as to whether the initial attempted arrest of plaintiff was lawful (that is, based on probable cause). Therefore, without reaching the merits of plaintiff's assault and battery claim, defendant cannot be entitled to summary judgment on the issue of State-law immunity or the substantive issue of whether defendant utilized excessive force in effecting the arrest of plaintiff, as both determinations turn on whether or not plaintiff initiated contact with defendant prior to the attempted arrest. The same genuine issue of material fact that precludes summary judgment for defendant on defendant's qualified immunity claims therefore also precludes summary judgment for defendant on defendant's State-law immunity claims.

### III.  CONCLUSION AND ORDER

For the reasons discussed herein, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, DENIED. The action will be set for pretrial

conference by separate order.

DONE and ORDERED this 17th day of September, 2013.

_____
United States District Judge

31